UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PETITION OF THE CENTER FOR INVESTIGATIVE REPORTING | Case No. 95-xr-00344-JD-1 <br><br> **ORDER RE REQUEST TO UNSEAL WIRETAP MATERIALS** |

The Center for Investigative Reporting has asked to unseal the docket and all sealed records in this case. Dkt. No. 15. The request to unseal the docket sheet was not opposed by the government; it has already been granted and the pertinent records are publicly available. *See* Dkt. No. 32 and ECF docket for Case No. 95-xr-344-JD.

This order resolves the Center's requests to unseal the records at Docket Numbers 1-14, all of which relate to a wiretap application made by the government on October 19, 1995. *See* Dkt. No. 1. Efforts to informally resolve the case were unsuccessful, and the parties could not agree to disclosures on a redacted basis. *See* Dkt. Nos. 32, 39, 40.

The parties' familiarity with the facts is assumed, and the Center's remaining unsealing requests are denied.[1] The Center's belated request for an evidentiary hearing, Dkt. No. 46, is unwarranted and is also denied.

## DISCUSSION

**I.  TITLE III OF THE OMNIBUS CRIME CONTROL AND SAFE STREETS ACT**

    **A.  Applications Made and Orders Granted under Title III**

As the unsealed docket sheet indicates, Docket Numbers 1-3, 7, 8, 10-12, and 14 are

---

[1] The Center's standing to request unsealing is not disputed by the government, *see* Dkt. No. 16 at 9-10, Dkt. No. 23, and so leave for it to intervene is granted.

applications made and orders granted under 18 U.S.C. § 2518, which governs the procedure for the interception of wire, oral, or electronic communications.[2] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq., provides that wiretap applications and orders "shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years." 18 U.S.C. § 2518(8)(b).

To start the discussion, the government's contention that the wiretap applications and orders "may only be unsealed upon a showing of good cause by an aggrieved party," Dkt. No. 23 at 3, is not well taken. A "showing of good cause" is all that is required for disclosure. 18 U.S.C. § 2518(8)(b). The Court declines to impose a party limitation that cannot be found in the plain language of the statute. The Center need not also be an "aggrieved person," and the government has not identified any controlling or even persuasive authority that might compel a different conclusion.

Even so, the Center has not carried its burden of demonstrating good cause for the requested disclosures. In enacting Title III, a "fundamental policy adopted by Congress on the subject of wiretapping and electronic surveillance" was to "strictly . . . limit the employment of those techniques of acquiring information." *Gelbard v. United States*, 408 U.S. 41, 47 (1972). In Congress's words:

> 'To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further be limited to certain types of offenses and specific categories of crime with assurances that the interception is justified and that the information obtained thereby will not be misused.'

*Id*. at 47-48 (quoting Title III--Wiretapping and Electronic Surveillance: Findings, Pub.L. 90-351, § 801(d), 82 Stat. 211, 211 (1968)). The "Senate committee report that accompanied Title III"

---

[2] Docket Numbers 4-6, 9, and 13 are Ten Day Reports and an Inventory. To preserve the sealing, the Court will not summarize or otherwise disclose the facts and individuals discussed in the applications and related documents.

2

1   also underscored that, "although Title III authorizes invasions of individual privacy under certain
2   circumstances, the protection of privacy was an overriding congressional concern." *Id*. at 48.
3         The Center did not meaningfully engage with these privacy concerns, which frame the
4   "good cause" requirement. It says the passage of time since 1995 is enough in itself to assure that
5   unsealing the "historical court records" would "raise no privacy concerns whatsoever." Dkt.
6   No. 25 at 8; *see also id*. at 13 ("time has nullified any possible concerns related to privacy"). Why
7   that might be true was left unsaid. 1995 may seem to some like a long time ago, but the Court was
8   practicing as a young attorney then, and is here today along with millions of other robust souls
9   who were alive in 1995. It's a bit glib to say the privacy concerns of the persons whose
10  communications were intercepted without their consent can be safely disregarded just because the
11  wiretapping was done 30 years ago.
12        The Center tries to sidestep this by saying that most of the key persons "are either dead or
13  no longer in this country." Dkt. No. 25 at 4. But the Center has addressed only four individuals
14  whom the Center believes were targets of the wiretaps. *See* Dkt. No. 16 at 5-7. While the Center
15  is not privy to the identities of the other persons whose communications were intercepted here, the
16  essential nature of a wiretap is to capture communications of "innocent persons" who did not
17  "consent[] to the interception." *Gelbard*, 408 U.S. at 48. The Center did not even acknowledge
18  the existence of such persons, let alone grapple with how their privacy concerns might be
19  impacted if the Court were to grant the unsealing request. This is a major hole in the Center's
20  case. Good cause cannot be established when the Center did not even acknowledge the privacy
21  concerns of innocent parties whose potentially intimate conversations may be published, or the
22  privacy interests of undercover law enforcement officers or confidential sources who may face
23  harm if their involvement were now to be revealed publicly.
24        The Center's argument for the ostensible need for disclosure was equally threadbare. In
25  effect, it simply asserts a curiosity about a sealed court record, untethered to any specific concern
26  or issue that might justifiably outweigh the privacy concerns that remain at play. To say, as the
27  Center does, that the release of these records would help it "recount to the public a full and
28  accurate story about the facts of this case," Dkt. No. 25 at 13, is just saying that it's curious in

different words. That the public might be particularly curious because of the current state of U.S.-Russia relations, *see id.*, does not advance the ball. Overall, this is far from a "particularized showing that [disclosure] is justified," which the Center itself acknowledged is required under a "good cause" standard. *See id.* at 10. The Center's representation that "[t]he financial investment in this project has already been immense," Dkt. No. 16 at 8, is certainly not an element of "good cause" under 18 U.S.C. § 2518(8)(b). The Center's desire to "produce a documentary and radio special about events related to" this case, Dkt. No. 16 at 8, is not an acceptable reason to toss aside the privacy concerns of innocent persons whose intimate communications were intercepted, and whose privacy concerns the Center simply declares have been nullified by time.

As a final pitch, the Center suggests that any "specific privacy concerns" can "be easily mitigated through redaction." Dkt. No. 25 at 14 (quotations and citation omitted). The question of redactions is not nearly that simple, as the failed negotiations between the parties attests to. In addition, the government explained to the Court early on in these proceedings that disclosures on a redacted basis really were not possible here, because the sealed records at issue were chock full of information the disclosure of which would implicate third-party privacy concerns, and the redactions of which would render any disclosures meaningless. The Court has received the records and reviewed them *in camera*, and agrees with the government's assessment.

### B.     Ten Day Reports and Inventory

For the Ten Day Reports and Inventory that are on the docket at Docket Numbers 4-6, 9, and 13, the government says that these materials are not subject to 18 U.S.C. § 2518(8)(b) because they are not "applications made and orders granted under this chapter." In the government's view, these materials must remain sealed because their disclosure it not permitted by 18 U.S.C. § 2517. *See* Dkt. No. 23 at 4-5.

The Court need not make a definitive classification of the reports and inventories. That is because, even accepting the Center's argument that the good cause standard should apply, the Center has not, as discussed, made such a showing.

## II. COMMON LAW AND FIRST AMENDMENT

Recasting the request to unseal under the common law and First Amendment does not advance the Center's position. The Court has no occasion to turn to federal common law at all when, as here, Congress has "spoken to a particular issue." *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 313 (1981). Congress's message in Title III is loud and clear, and leaves no room for a common law work-around.

So too for the Center's point about the "history and logic" of the First Amendment. The Center suggests that "[h]istory leans in favor of disclosure," Dkt. No. 25 at 1, and cites the Wiretap Act itself as the source of this ostensible leaning. But as discussed, the plain language of the statute does not support this, and a statute from the late 1960s is not particularly good evidence of an historical constitutional practice. On the logic element, the Center relies on the government's disclosure agreement "in a related case involving the same exact parties," *id*., but the fact that the government consented to disclosure in a different case with different circumstances in no way "negat[es] any possible privacy concerns" in this case. *Id*. at 1 & n.1. The Court also notes that the Second Circuit has held that "under either the 'history and logic' or public attendance approach, the [New York] Times does not enjoy a First Amendment right of access to wiretap applications sealed under 18 U.S.C. § 2518(8)(b)." *In re New York Times Co.*, 577 F.3d 401, 411 (2d Cir. 2009).

Even if the Court were to assume that a qualified First Amendment right of access might apply to the wiretap materials here, disclosure would not be warranted for the reasons stated by the Seventh Circuit in *United States v. Dorfman*, 690 F.2d 1230, 1234 (7th Cir. 1982):

> [This case] concerns wiretap materials that may never be presented at the trial. No law enforcement interest requires that this evidence be made public. There is public curiosity about it, but curiosity is just the opposing force to privacy; one of them has to yield; both have constitutional dignity.
>
> Congress in Title III struck a balance between these interests that seems reasonable to us. It put no limits on the public disclosure of lawfully obtained wiretap evidence through public testimony in legal proceedings; but neither did it authorize wiretap evidence not made public in this manner to be made public another way without the consent of the people whose phone conversations were intercepted.

5

The Center has wholly failed to grapple with the privacy concerns protected by Title III, and as such has not established that any First Amendment right of access would overcome those privacy concerns.

## CONCLUSION

There will be no further unsealing of the materials contained in the docket for Case No. 95-xr-344-JD.  The Center's motion, Dkt. No. 15, is terminated.

**IT IS SO ORDERED.**

Dated:  January 13, 2025

JAMES DONATO
United States District Judge

6